## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

JOHN A. CLARKE, JR. ,

               Petitioner,     :           Case No. 2:25-cv-00750

  - vs -                        Chief Judge Sarah D. Morrison
                                     Magistrate Judge Michael R. Merz

FRANKLIN COUNTY
  PROBATION DEPARTMENT,

                              :
          Respondent.

## SUBSTITUTED REPORT AND RECOMMENDATIONS;
## ORDER DENYING MOTION TO STRIKE

This is a habeas corpus action brought by Petitioner John A. Clarke, Jr., with the assistance of counsel. The undersigned previously filed a Report and Recommendations ("Initial Report," ECF No. 17). Counsel's timely-filed Objections warrant this Substituted Report to address the objections raised. Rather than require the District Judge to consider two Reports, the prior Report has been withdrawn (ECF No. 19) and this Substituted Report replaces it. This Substituted Report renders Respondent's Motion to Strike (ECF No. 20) moot and it is hereby denied.

**Litigation History**

On December 16, 2020, a Franklin County Grand Jury returned a four-count indictment charging Petitioner with two counts of election falsification in violation of Ohio Revised Code § 3599.36 and two counts of tampering with records in violation of Ohio Revised Code § 2913.42.

1

The offenses related to financial reports submitted on July 31, 2019, and August 15, 2019, on behalf of the Columbus Clean Energy Initiative ("CCEI").  A jury convicted Petitioner on one count of election falsification and he was sentenced to 120 days imprisonment and five years of community control[1].

Clarke appealed to the Ohio Tenth District Court of Appeals, raising four assignments of error, all of which the appellate court overruled.  *State v. Clark*[2], 231 N.E. 3d 459, 2023-Ohio-4434 (Ohio App. 10th Dist. Dec. 7, 2023).  The Ohio Supreme Court declined jurisdiction over a subsequent appeal.  *State v. Clark*, 173 Ohio St. 3d 1445 (Apr. 2, 2024).

Clarke then filed his Petition in this Court, through counsel, on July 7, 2025, pleading the following grounds for relief:

> **Ground One:** The Ohio Courts ruled contrary to, or unreasonably applied, clearly-established Supreme Court precedent and/or entered a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, as the evidence failed to prove beyond a reasonable doubt that Clarke was guily [sic] of all elements of election falsification.
>
> **Supporting Facts:** The state was required to prove beyond a reasonable doubt that Clarke knowingly made a false statement in an election filing while either under oath or aware that the statement was made under the risk of being charged with a crime. The state presented evidence that attestation language appeared on a screen. But the state did not prove that Clarke saw and was aware he was under penalty of a crime when filing the documents.
>
> **Ground Two**: The Ohio Courts ruled contrary to, or unreasonably applied, clearly-established Supreme Court precedent and/or entered a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, as the trial court appointed City of Columbus counsel as special counsel for prosecution of Clarke when the City of Columbus was an interested party, the victim.

---

[1] Petitioner has completed service of the jail time but remains sufficiently in custody by virtue of his probationary sentence for the Court to exercise habeas corpus jurisdiction.
[2] The Tenth District spelled Petitioner's last name "Clark."

**Supporting Facts:** The City of Columbus was an interested party and claimed victim of the election falsification. And yet the trial court appointed City of Columbus counsel as special counsel for the criminal prosecution in this case.

**Ground Three:** The Ohio Courts ruled contrary to, or unreasonably applied, clearly-established Supreme Court precedent and/or entered a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, as the record demonstates [sic] that Clarke's trial counsel was prejudicially ineffective.

**Supporting Facts:** Trial counsel failed to object to Detective Schiff's testimony describing discussions with four people listed as contributors, Schiff's testimony about the contents of documents not introduced as evidence, and Ramsini's testimony about how the database worked in 2019.

**Ground Four:** The Ohio courts entered decisions that were unreasonable in light of the trial record by failing [to follow] Supreme Court precedent and/or entered a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, as the admission of evidence deprived Clarke of due process and a fair trial.

**Supporting Facts:** Evidence that was wrongly admitted, and to which counsel should have objected but failed to do so, so severely and unfairly prejudiced Clarke that he was deprived of the rights to due process and a fair trial.

(Petition, ECF No. 1, PageID 5, 7, 8, 10). In his request for relief, Clarke requests dismissal of the case for "lack of sufficient evidence or, in the alternative, dismissing the indictment for violation of the right to a speedy trial," *Id.* at PageID 15. No separate ground for relief is pleaded claiming a Sixth Amendment speedy trial violation.

Petitioner admits that Grounds Three and Four were not presented to the Supreme Court of Ohio on appeal, but blames that on error of counsel before that Court and "seeks an order [from this Court] excusing the default." *Id.* at PageID 12.

3

# Analysis

**Statute of Limitations**

In the Petition, Clarke claimed his filing was timely under 28 U.S.C. § 2244(d)(1)(A). This section codifies that portion of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No. 104-132, 110 Stat. 1214)(the "AEDPA") which established a one-year statute of limitations for habeas corpus cases to run from the date on which the conviction became final on direct appeal.

In the Return of Writ, Respondent pointed out that the Petition was filed late if the statute is calculated under 28 U.S.C. § 2244(d)(1)(A)(Return, ECF No. 9, PageID 1590). Clarke responded in his Traverse by seeking equitable tolling instead of claiming compliance with the statute (Traverse, ECF No. 11, PageID 1610). To support the equitable tolling claim and show his due diligence, Clarke filed an Affidavit with the Traverse in which he avers:

> 2. I was represented in the Supreme Court of Ohio by counsel with the Huey Defense Firm in Columbus.
>
> 3. [omitted]
>
> 4. When the Supreme Court of Ohio denied relief, the law firm contacted me with that news.
>
> 5. The law firm did not report the exact date of the decision, and I did not know that date.
>
> 6. The law firm gave me zero advice on the availability of filing a § 2254 petition within a year of that date. I had no idea I had further recourse through the federal courts.
>
> 7. I did not hear from that firm at any time after they told me of the decision.
>
> 8. Without an attorney and using ChatGPT, I learned that I had the right to proceed to federal court. I was not able to determine the due

4

date for the petition.

> 9. I turned to a paralegal organization because I did not want to rely on ChatGPT. That organization informed me that the Supreme Court of Ohio decision was dated April 15, 2024 and that, as a result, my convictions became final July 14, 2024, and the filing deadline for this action was July 14, 2025.

(Clarke Affidavit, ECF No. 11-1, PageID 1632-33).

In the Initial Report, the undersigned asserted Clarke had not provided corroboration of

the details in this affidavit (hereinafter the "First Affidavit") raising the following questions:

> Additional detail which would be readily available to Clarke but which is not provided would include
>
> (1) When was he advised he had lost in the Ohio Supreme Court and was the advice written?
>
> (2) What effort did Clarke make and when to learn the date of the Supreme Court decision? (The Ohio Supreme Court's docket is available to the public online and would show the date of the decision.)
>
> (3) At some point in time before he retained current counsel, Clarke used ChatGPT to learn of the availability of federal habeas corpus. When? Why didn't he ask ChatGPT about a filing deadline? (A Google query by the undersigned for the deadline for filing a federal habeas petition provides the answer that it is "generally one year from when your state conviction becomes final starting after all direct appeals are exhausted.")
>
> (4) Not trusting ChatGPT, Clarke turned to a paralegal organization which gave him the wrong date of April 15, 2024, for the Ohio Supreme Court's decision. What paralegal organization? Was the advice written? If so, why is the Court not provided with a corroborating copy?
>
> (5) When did Clarke retain current counsel?

(Report, ECF No. 17, PageID 1713-14). These questions reflect the rule that a party claiming

equitable tolling has the burden of proving entitlement.

On January 9, 2026, Clarke filed his Third Affidavit in which he avers

> After the Ohio Supreme Court declined jurisdiction, I **eventually** began researching postconviction options. Per my browser search history, I began searching for habeas assistance in **mid-May 2025.** A dated entry on 5/14/2025 reflects a search for "habeas corpus attorneys Ohio."

(Reply, ECF No. 16, PageID 1707 (emphasis added)).  He continues that he contacted many attorneys by telephone, some of whom declined outright and some of whom wanted fees too high for him to afford. *Id.* at ¶4.  He then contacted a "paralegal company [unidentified]," as an affordable alternative and they wrote him a  letter [unattached] which said the deadline was July 14, 2025. *Id.* at ¶ 5-6.  He then contacted current counsel on June 18, 2025, and executed paperwork to retain Attorney Brandt on June 25, 2025 *Id.* at ¶8, PageID 1708.

Current counsel repeatedly accuses the Huey Firm of "abandoning" Clarke after the Ohio Supreme Court declined to exercise jurisdiction, but the Court is not supplied with any details about Clarke's retaining of the Huey Firm except that it was for the Ohio Supreme Court part of the case.  "Abandonment" suggests that firm had some duty beyond telling Mr. Clarke that he had lost in the Ohio Supreme Court and Petitioner cites no authority for that proposition. "Abandonment" connotes  having accepted responsibility and then failing to fulfill it, but the Court is offered no evidence that the Huey firm's responsibility went beyond what it did.

By his own admission, Clarke did nothing after learning he had lost in the Ohio Supreme Court until May 14, 2025, more than a year after that loss.  That does not evidence due diligence.

Finally, Clarke contacted current counsel on June 18, 2025, and executed paperwork to retain him in this case on June 25, 2025, almost two weeks before the Petition was filed.  Counsel continues to refer to the delay as a "mere" six days, but the Sixth Circuit has held that "Absent compelling equitable considerations, a court should not extend limitations by even a single day."

6

*Graham Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000).

In sum, Mr. Clarke has not shown he acted with diligence from April 2, 2024, until May 14, 2025, when he admits he "eventually" began to look for further post-conviction remedies. That does not show due diligence on his part. As of June 25, 2025, filing became the responsibility of current counsel. Why did he wait until July 7, 2025, to file? He certainly knew he could check the Supreme Court's decision date by consulting that Court's on-line data base. Attorney Brandt gives no reason why he did not file on time and as Clarke's agent, that decision is attributable to Clarke.

**Merits**

**Ground One:  Conviction Entered on Insufficient Evidence**

In his First Ground for Relief, Mr. Clarke asserts his conviction is not supported by sufficient evidence. Petitioner presented this claim to the Tenth District Court of Appeals which decided it as follows:

> Whether the state presented sufficient evidence that Mr. Clark's statements were made under penalty of election falsification
>
> {¶ 27} Pursuant to the first paragraph of R.C. 3599.36, no person shall knowingly make a false statement as to a material matter when that statement is subject to penalty of election falsification. Separate and apart from these elements of the offense, R.C. 3599.36 states in its third paragraph that an election falsification attestation must accompany every "paper, card, or other document" relating to a "matter that calls for a statement to be made under penalty of election falsification." We cannot see how the knowledge requirement in the statute's first paragraph relates to the attestation requirement in the third paragraph. Instead, the statute instructs that, to convict a person of election falsification, the state needs to prove

only that a false statement was knowingly made and the statement is one that must be made under penalty of election falsification per some other section of the Revised Code.

{¶ 28} The state presented sufficient evidence to establish that Mr. Clark knowingly submitted false information regarding contributions and expenditures when he clicked to formally submit that information as part of CCEI's amended campaign finance report. Mr. Clark reported in CCEI's amended campaign finance report that Ms. Heard and Ms. Martinez contributed $10,000 to the campaign. (State's Ex. B at 2.) However, when both women were called to testify, they denied making monetary contributions to the campaign. (Tr. Vol. III at 556-57, 573-75.) And, Mr. Clark, too, conceded that neither Ms. Heard nor Ms. Martinez contributed money to the campaign, and he was aware of that fact in 2019. (Tr. Vol. III at 633. *But see* Tr. Vol. III at 656-57 (despite these concessions, he denied the information he provided was false)).

{¶ 29} But even if R.C. 3599.36 required proof that an election falsification attestation accompanied the documents, the state presented sufficient evidence that one did. R.C. 3599.36 states that "[e]very paper, card, or other document relating to any election matter that calls for a statement to be made under penalty of election falsification shall be accompanied by the following statement in bold face capital letters: 'Whoever commits election falsification is guilty of a felony of the fifth degree.' "

{¶ 30} The statute merely requires that an attestation *accompany* each paper or document that calls for a statement to be made under penalty of election falsification. Forms 30-A, 31-A, and 31-B all make up a single document—a campaign finance report. Although the record does not establish that Mr. Clark would have seen the election falsification attestation at the time he typed the data into the database, there is sufficient evidence to establish that, prior to submitting the information to the government as one campaign finance report document, Mr. Clark would have seen the attestation displayed on the screen. Ms. Ramsini testified that in August 2019, a person using the campaign finance database would have seen the attestation before clicking to submit a report. (*See* Tr. Vol. II at 304-05, 339.) Although Ms. Ramsini also testified that the database has changed, and now includes a checkbox with the attestation language (Tr. Vol. II at 337-38), that does not undermine her testimony that, in 2019, an attestation would have appeared onscreen before Mr. Clark clicked to submit the first amended campaign finance report. And that is all that would be required under this reading of R.C. 3599.36.

*State v. Clark, supra.*

**Positions of the Parties**

In his Brief in Support of his Petition, Clarke argues this conclusion by the Tenth District is either contrary to or an objectively unreasonable application of relevant United States Supreme Court precedent so as to justify habeas relief under 28 U.S.C. § 2254(d)(1) or a decision based on an objectively unreasonable determination of the facts in light of the evidence so as to warrant relief under 28 U.S.C. § 2254(d)(2)(Brief, ECF No. 7, PageID 27).

Responding in the Return of Writ, Franklin County Probation argues that this Court is bound by the Tenth District's interpretation of the relevant criminal statute and its conclusion that the State satisfied that statute with the evidence it presented at trial (Return, ECF No. 9, PageID 1596-1600).

In his Traverse Petitioner argues that he can overcome the doubly-deferential standard that applies to sufficiency claims under *Jackson v. Virginia*, 443 U.S. 307 (1979). He relies in part on his own Affidavit (ECF No. 7-1) which appears at least in part to assert an advice-of-counsel defense to the offense of which he was convicted. He also reads the Return as arguing Ground One is not cognizable in habeas "by recasting Clarke's insufficiency argument as a state court determination of state law." (Traverse, ECF No. 11, PageID 1620). He concedes that the

> Tenth Appellate District may have been correct that the "made under penalty of election falsification" element is "separate and apart" from the paragraph requiring attestation. Regardless, the evidence failed to present evidence on which the jury could have believed that Clarke made the statement "under" penalty of election falsification because, unlike the alternative when a person is sworn and "under" oath, the state did not show that Clarke was "under" penalty without knowledge of the penalty and repercussions of making a false statement. This is material to the case because, as the record shows, Clarke made repeated attempts to ensure that the attorney he had

hired to make sure he was in compliance failed him. The attorney turned around and directed Clarke to file as is.

In sum, Clarke's argument is not that the Tenth Appellate District wrongly "defined" the elements of the statute. *Cf.* ECF 9, Answer, PageID#1598. His argument is that the element of "made under penalty of election falsification" was not proved.

(Traverse, ECF No. 11, PageID 1620-21).

## Analysis

A claim that a verdict is not supported by sufficient evidence states a claim for relief under the Fourteenth Amendment. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*).

This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324).  This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses; but once the State has adopted the elements, it must

then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  When reviewing a claim for sufficient evidence, a federal habeas court must apply, as Petitioner concedes, a twice-deferential standard." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (*per curiam*).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(*en banc*); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647,

656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(*per curiam*); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (*per curiam*).

In attempting to rebut the Tenth District's conclusion of sufficiency, Petitioner relies in part on his own Affidavit, offered initially in these proceedings. Consideration of that Affidavit is precluded by *Cullen v. Pinholster,* 563 U.S. 170 (2011). *Pinholster* bars a federal court "from admitting new evidence upon which to assess the reasonableness of a state court's constitutional analysis." *Upshaw v. Stephenson*, 97 F. 4th 365, 372 (6th Cir. 2024), quoting *Mitchell v. Genovese*, 974 F.3d 638, 647 (6th Cir. 2020).

Petitioner also relies in part on alleged advice from his attorney. *E.g.,* Traverse, ECF No. 11, PageID 1620: "The attorney turned around and directed Clarke to file as is." Petitioner gives no record reference to evidence of this supposed direction from counsel[3]. If the intended evidentiary support is found in Petitioner's Affidavit, its consideration is precluded by *Pinholster,*

---

[3] The Order for Answer in this case provides "[w]hen the record is filed electronically, the Court's CM/ECF filing system will affix a unique PageID number to each page of the record, displayed in the upper righthand corner of the page. All papers filed in the case thereafter by either party shall include record references to the PageID number" (ECF No. 4, PageID 21).

*supra.*

The Tenth District's interpretation of the relevant statute is binding on this Court, particularly in that no competing interpretation of the statute by other Ohio courts is offered[4]. Petitioner's § 2254(d)(2) attack is apparently based somehow on the rule against stacking inferences, but Petitioner cites no Supreme Court precedent forbidding that practice. "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *United States v. Ramirez*, 635 F.3d 249, 256 (6th Cir. 2011), quoting *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1993); *United States v. Wettstain,* 618 F.3d 577, 583 (6th Cir. 2010); *United States v. McAuliffe,* 490 F.3d 526, 537 (6th Cir. 2007); *United States v. Kelley,* 461 F.3d 817, 825 (6th Cir. 2006); *United States v. Reed,* 167 F.3d 984, 992 (6th Cir. 1999); *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir. 1992); *United States v. Hendricks*, 950 F.3d 348, 352 (6th Cir. 2020).  Justice Brennan wrote for the United States Supreme Court:  "[D]irect evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 330 (1960)(Brennan), citing *Rogers* v. *Missouri Pacific R. Co*., 352 U.S. 500, 508, n. 17(1957).

Particularly in a case such as this, where the contested element is the *mens rea* of acting knowingly, the most persuasive evidence would be an admission by a defendant.  However, under the Fifth Amendment a criminal defendant cannot be compelled to testify to what he knew.  The Tenth District's summary of the evidence is sufficient to prove Petitioner acted with the required *mens rea* in this case.

---

[4] In its apparent caution against a competing interpretation by the Ohio Supreme Court in an appeal in this case, the Tenth District offered an alternative analysis of the evidence.  However, the Ohio Supreme Court declined to exercise jurisdiction.

Petitioner relies on *Newman v. Metrish*, 543 F.3d 793 (6th Cir. 2008), where the Sixth Circuit granted habeas relief despite the double deference rule. In that case the two-judge majority held there was no evidence to place the accused murderer at the scene of the crime. The undersigned acknowledges that doubly deferential review does not mean no review, but here the Tenth District adequately explained why the critical inference of sufficient *mens rea* was supported.

Ground One should therefore be dismissed on the merits, as well as on the statute of limitations ground.

**Ground Two: Improper Appointment of Special Prosecutor**

In his Second Ground for Relief, Petitioner asserts the Common Pleas Court acted unconstitutionally when it appointed an attorney for the City of Columbus as special prosecutor in this case. Petitioner raised a claim relating to the special prosecutor appointment as his first assignment of error on direct appeal and the Tenth District decided it as follows:

> {¶ 17} In his first assignment of error, Mr. Clark takes issue with the "dual role" he believes the City of Columbus played in his case. Specifically, he claims the appointment of a special prosecutor from the Columbus City Attorney's Office " 'warped the framework within which the trial proceeded.' " (Appellant's Brief at 11-12, quoting *State v. Montgomery*, 169 Ohio St.3d 84, 2022-Ohio-2211, 202 N.E.3d 616, ¶ 23.) He asserts the trial court committed structural error by permitting a prosecutor with the Columbus City Attorney's Office to serve as special prosecutor in his case. For the following reasons, we disagree.

> {¶ 18} Because Mr. Clark did not object to the special prosecutor's appointment below, he has forfeited all but plain error review of his argument. *See, e.g.*, *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Pursuant to Crim.R. 52(B), a plain error is one that affects substantial rights and may be noticed by an appellate

court although not brought to the attention of the trial court. "To warrant reversal under plain error review, this court must find: (1) 'an error, *i.e.*, a deviation from a legal rule;' (2) the error is plain or obvious; and (3) the error affected the outcome of the trial court proceedings." *Columbus v. Carmichael*, 10th Dist. No. 22AP-306, 2023-Ohio-1386, 2023 WL 3118181, ¶ 11, quoting *Barnes* at 27, 759 N.E.2d 1240.

{¶ 19} In *Montgomery*, the Supreme Court of Ohio held that a criminal defendant's right to a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution is violated when the trial court permits an alleged victim to sit at the prosecutor's table throughout trial and be formally introduced to the jury as the state's representative. The court was concerned that this designation and location in the courtroom "risked misleading the jury into thinking that just as defense counsel represents the defendant, the prosecuting attorney represents the alleged victim, or even more harmful, that the alleged victim as the complaining witness and the prosecution are one and the same." *Id.* at ¶ 23. The court concluded that such a "dual role" for a victim "warp[s] the framework within which the trial proceed[s]" and undermines a criminal defendant's right to a fair trial. *Id.* And, because this error is so pervasive and its effect on the fundamental fairness of a trial is too difficult to gauge, the court held that it constitutes structural error requiring reversal. *Id.* at ¶ 31 -33.

{¶ 20} We cannot agree that the special prosecutor's role during Mr. Clark's trial was akin to the facts presented in *Montgomery*. Critical to *Montgomery*'s holding was the potential harm that comes from a jury hearing and seeing a victim in this "dual role." But here, regardless of whether the special prosecutor was actually playing a dual role—a point the state contests in its brief and we need not resolve in this appeal—the jury never heard anything about it. Mr. Gibson introduced himself to the jury as one of two attorneys representing the state, and his employment with the City of Columbus never came up at trial. (*See* Tr. Vol. I at 11-12.)

{¶ 21} Mr. Clark reads *Montgomery* to hold that "a prosecutor *cannot* represent the interest of the complaining witness, nor vice versa." (Emphasis sic.) (Appellant's Brief at 13.) But as Mr. Clark acknowledges in his brief, the *Montgomery* court was concerned with the impact such a dual role could have on a jury. (Appellant's Brief 13, quoting *Montgomery* at ¶ 23.) Because Mr. Gibson's role as prosecutor with the City Attorney's Office was never revealed to the jury and therefore none of the concerns

associated with *Montgomery* are present here, we must reject Mr. Clark's first assignment of error.

*State v. Clark, supra.*

Petitioner asserts the Tenth District's decision on this claim is contrary to *Young v. U.S. ex. rel  Vuitton et Fils, S.A.,*, 481 U.S. 787 (1987).  In that case parties to a settlement agreement in a civil case were alleged to have violated the injunction which had been agreed on as part of the settlement.  The District Court had appointed counsel from the injured party to serve as a special prosecutor for the criminal contempt proceeding.  The Supreme Court reversed, but the case did not produce a majority opinion.  Justices Marshall, Blackmun, and Stevens concurred with Justice Brennan that harmless error analysis was inappropriate.  Justice Scalia, however, concurred in the judgment, expressing his long-held but minority opinion that the federal courts have no authority to initiate or prosecute criminal contempts at all.

This, of course, is not a contempt case, but a straight criminal prosecution to protect the public interest in enforcement of a state criminal statute.  There has been no showing that somehow the public interest in enforcement of the election statutes would differ from or conflict with that of the City of Columbus, although that appears to have been the principal concern of the Supreme Court in *Young*.

Respondent argues that "There is no rule that prohibits an attorney from prosecuting a case simply because the governmental entity that employs the attorney was directly or indirectly affected by the alleged criminal conduct" and then cites the Department of Justice's representation of the United States in criminal cases.  Compelling examples are closer at hand.  At least since the 1950's Ohio municipalities have enacted ordinances prohibiting the same traffic misconduct as is prohibited by the Ohio Revised Code.  Why?  Because the fines generated by ordinance violation go to the city, but fines generated by the same conduct but prosecuted under the Ohio Revised

16

Code go to State entities. These cases are routinely prosecuted by city attorneys whose employers stand to benefit. Having presided over literally hundreds of thousands of traffic cases from 1977 through 1984, the undersigned never heard this argument Clarke makes made by any defendant despite continually vigorous defense of those cases (where jail was a possible consequence) by the Montgomery County Public Defender's Office. The Tenth District's decision is not an objectively unreasonable application of Supreme Court precedent.

Aside from the merits, the Respondent argues two bases for procedural default of this second ground. First of all, Petitioner never objected to the special prosecutor appointment. Secondly, the claim was not fairly presented to the Tenth District as a federal constitutional claim.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley,* 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry,* 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that

> there was "cause" for him to not follow the procedural rule and that
> he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley*, 492 F.3d 347, 357

(6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

As to the first asserted procedural default, Ohio has a requirement that a party make a

contemporaneous objection to trial court error so that the error can be corrected without a new

trial. States have a very strong interest in the contemporaneous objection rule. *Scott v. Mitchell,*

209 F.3d 854 (6th Cir. 2000), quoting extensively from *Wainwright v. Sykes*, 433 U.S. 72, 88-90

(1977). Ohio's contemporaneous objection rule is an adequate and independent state ground.

*Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000),

*citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982).

Here the Tenth District enforced the contemporaneous objection rule by reviewing this

claim only for plain error. An Ohio state appellate court's review for plain error is enforcement, not

waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v.*

*Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006);

*White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005);

*Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001).

Secondly, to preserve a federal constitutional claim for habeas review, a petitioner must fairly

present that claim as a federal claim in the state courts. Petitioner here presented this claim purely an

asserted violation of the Ohio Supreme Court's decision in *State v. Montgomery,* 169 Ohio St.3d 84

(2022). Although the Ohio Supreme Court decided that case on federal constitutional grounds, it is

only decisions of the United States Supreme Court which "count" under 28 U.S.C. § 2254(d)(1). On

the merits the Tenth District adequately distinguished *Montgomery*.

In sum, Ground Two should be dismissed as procedurally defaulted and also without merit.

**Ground Three:  Ineffective Assistance Of Trial Counsel**

**Ground Four:  Improper Admission of Evidence**

In his Third Ground for Relief Petitioner claims he received ineffective assistance of trial counsel based on several objections trial counsel failed to make.  In his Fourth Ground for Relief he asserts the trial court improperly admitted some of the evidence on which the State relied.

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright v. Sykes*, 433 U.S. 72 (1977). *Murray v. Carrier*, 477 U.S. 478, 485 (1986);  *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94, 97 (6th Cir.), *cert denied,* 474 U.S. 831 (1985).  To properly exhaust a claim in state court, a prisoner must have argued the claim's factual and legal basis at each level of the state court system. *Whitman v. Gray*, 103 F.4th 1235, 1238 (6th Cir. 2024). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default.   "Even if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.'" *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009), citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)(quoting *O'Sullivan v. Boerckel,* 526 U.S. 838, 846-7(1999)); see also *Dietz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) ("A federal court is also barred from hearing issues that could have been raised in the state courts, but were not[.]").  Petitioner's Grounds Three and Four were not presented to the Ohio Supreme Court on direct appeal from the Tenth District and are therefore procedurally defaulted.

To the extent Petitioner claims this default is excused by the ineffective assistance of his Supreme Court counsel, the Sixth Amendment effective assistance of counsel right applies only to those proceedings where an indigent petitioner is entitled to appointed counsel.  The right to

appointed counsel extends to the first appeal of right and no further.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600 (1974).  Ineffective assistance of counsel can excuse procedural default only when it occurs in a proceeding where a defendant is constitutionally entitled to counsel under the Sixth Amendment.  *Wainwright v. Torna*, 455 U.S. 586 (1982)(where there is no constitutional right to counsel there can be no deprivation of effective counsel); *Riggins v. Turner*, 1997 U.S. App. LEXIS 6115, *5 (6th Cir. 1997); *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio 2002).

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

February 4, 2026.

s/ *Michael R. Merz*
United States Magistrate Judge

20

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.